United States District Court
Southern District of Texas
**ENTERED**
June 07, 2024
Nathan Ochsner, Clerk

# In the United States District Court
# for the Southern District of Texas

## GALVESTON DIVISION

No. 3:23-cv-387

JERI PEARSON, *ET AL.*, *PLAINTIFFS*,

v.

SHRINERS HOSPITALS FOR CHILDREN, *ET AL., DEFENDANTS*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

Before the court are motions to dismiss filed by Shriners Hospitals for Children and Cecile Erwin Young. Dkts. 23, 25. The court will grant both motions.

## I.    Background

This case arises from the interplay between a private hospital's role as a private employer and its function as a public-health provider.

Shriners Hospitals for Children is a network of not-for-profit hospitals. Dkt. 20 ¶ 72. In September 2021, Shriners issued an employment policy requiring all employees to become fully vaccinated from the COVID-19 virus

(the "COVID-19 Policy"). *Id.* ¶ 82. The COVID-19 Policy included medical and religious exemptions. *Id.* The plaintiffs, four former Shriners employees, were terminated for failing to comply with the COVID-19 Policy. *Id.* ¶ 89.

During the COVID-19 pandemic, Shriners also partnered with the federal government to distribute vaccines through the CDC's COVID-19 Vaccination Program. *Id.* ¶ 1. The plaintiffs allege Shriners entered into a "Provider Agreement" with the CDC. *Id.* ¶ 76; *see also* Dkt. 20-1 (blank provider agreement). This agreement set forth several parameters for vaccine distribution, including a promise to abide by the CDC's Emergency Use Authorization (EUA) requirements, codified in, 21 U.S.C. § 360bbb-3. Dkt. 20 ¶ 79.

The plaintiffs allege the EUA statute "expressly creates" the option to accept or refuse the vaccine without penalty. *Id.* ¶ 49. They contend the defendants—Shriners, five Shriners employees (the "Shriners Individuals"), and Cecile Erwin Young, the Executive Commissioner of the Texas Health and Human Services Commission— "willfully deprived" them of this right to refuse vaccination without penalty by terminating their employment for refusing the vaccine. *Id.* ¶¶ 9, 20.1–20.8. The plaintiffs bring seven separate claims under 42 U.S.C. § 1983, a federal statutory claim under 21 U.S.C. § 360, and three state-law claims. *Id.* ¶¶ 103–78.

Shriners has moved to dismiss under Rule 12(b)(2) all claims brought against the Shriners Individuals and to dismiss under Rule 12(b)(6) all claims against the hospital. Dkt. 23. Commissioner Young has moved to dismiss under Rules 12(b)(1) and 12(b)(6) all claims brought against her.

## II.  Legal Standards

### A. 12(b)(2)

Rule 12(b)(2) governs dismissal for lack of personal jurisdiction. The plaintiff bears the burden of establishing jurisdiction by prima facie evidence. *Frank v. PNK (Lake Charles) LLC*, 947 F.3d 331, 336 (5th Cir. 2020). "To determine whether the plaintiff has met this burden, the court can consider the assertions in the plaintiff's complaint, as well as the contents of the record at the time of the motion." *Id.* (cleaned up). The court "must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 869 (5th Cir. 2000) (quoting *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999)). The court is not obligated to credit conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).

"The Supreme Court has recognized two kinds of personal jurisdiction: general jurisdiction and specific jurisdiction." *Alexander v.*

*Anheuser-Busch, L.L.C.*, No. 19-30993, 2021 WL 3439131, at *2 (5th Cir. Aug. 5, 2021) (per curiam). "General jurisdiction arises when the defendant has 'continuous and systematic' contacts with the forum and 'allows for jurisdiction over all claims against the defendant, no matter their connection to the forum.'" *Id.* (quoting *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 778 (5th Cir. 2018)). "[F]or a state to have the power to hear [general] claims against a defendant, the defendant's ties with the state must be so pervasive that he is 'essentially at home' there." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 323 (5th Cir. 2021) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

Specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). "To be subject to specific jurisdiction, the defendant must have acted to 'purposefully avail[ ] itself of the privilege of conducting activities within the forum State' and 'there must be an affiliation between the forum and the underlying controversy.'" *Alexander*, 2021 WL 3439131, at *2 (quoting *Ford. Motor Co.*, 592 U.S. at 359). "The non-resident's purposeful availment must be such that the defendant should reasonably anticipate

being haled into court in the forum state." *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir. 1993) (internal quotation marks and citation omitted).

### B. 12(b)(6)

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the pleaded facts allow the court to reasonably infer that the defendant is liable for the alleged conduct. *Id.* In reviewing the pleadings, a court accepts all well-pleaded facts as true, "construing all reasonable inferences in the complaint in the light most favorable to the plaintiff." *White v. U.S. Corrections*, *L.L.C.*, 996 F.3d 302, 306–07 (5th Cir. 2021). But the court does not accept "[c]onclusory allegations, unwarranted factual inference, or legal conclusions" as true. *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

### III.  Analysis

The defendants have moved to dismiss the claims against: (1) the Shriners Individuals for lack of personal jurisdiction, (2) Shriners for failure

to state a claim, and (3) Cecile Erwin Young for failure to state a claim. Dkts. 23, 25. The court will address each in turn.

### A. Personal Jurisdiction over the Shriners Individuals

The plaintiffs offer a single fact in support of personal jurisdiction over the five Shriners Individuals: that they, as employees, created a policy that was implemented in Texas. Dkt. 27 at 4. This is not enough.

The fiduciary-shield doctrine protects individual employees from personal jurisdiction when they act on behalf of their corporate employers. *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 676 (S.D. Tex. 2014); *see also Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985). There are two well-recognized exceptions to the doctrine: (1) when an individual uses a corporation as a mere alter ego, and (2) when an individual commits a tort. *Evergreen Media*, 68 F. Supp. 3d at 677.

The plaintiffs allege the Shriners Individuals, all of whom reside outside of Texas, produced Shriners' COVID-19 Policy in their capacity as employees, which was then implemented in Texas. Dkt. 27 at 4. This singular act falls squarely within the protection of the fiduciary-shield doctrine, and neither exception is applicable.

As the plaintiffs fail to offer any other grounds for personal jurisdiction over the Shriner Individuals, the court will dismiss the claims against the Shriners Individuals.

### B. State Action under § 1983

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was *committed by a person acting under color of state law.*" *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005) (emphasis original) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). "[M]ere private conduct, no matter how discriminatory or wrongful, is excluded from § 1983's reach." *Id.* (cleaned up).

However, "when a private actor's conduct can be fairly attributable to the State," a claim may proceed under the state-action doctrine. *Id.* "Deciding whether a deprivation of a protected right is fairly attributable to the State 'begins by identifying the specific conduct of which the plaintiff complains.'" *Id.* at 550 (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)).

There is little doubt that Shriners' decision to terminate the plaintiffs' employment is the specific conduct at issue. The core dispute, however, is the

link between Shriners' termination decision and Shriners' participation in the CDC's COVID-19 Vaccination Program.

The plaintiffs repeatedly urge that, as a COVID-19-vaccine provider, Shriners agreed to comply with the EUA statute. Dkts. 20 ¶¶ 7–9, 27 at 5. The statute requires that, "[w]ith respect to the emergency use of an unapproved product" like the COVID-19 vaccine, the Secretary of Health and Human Services establish "[a]ppropriate conditions designed to ensure that individuals to whom the product is administered are informed . . . of the option to accept or refuse administration of the product." 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III). According to the plaintiffs, this language "expressly creates . . . the option to accept or refuse" the COVID-19 vaccine without penalty. Dkt. 20 ¶ 49. The plaintiffs argue that Shriners' termination decision is a clear deprivation of this alleged statutory right. *Id.* ¶ 9.

Shriners contends that the termination decision was "unmoored" from any responsibilities it may have had as a medical provider under the EUA. Dkt. 23 at 24. Instead, Shriners terminated the plaintiffs' employment because they violated Shriners' COVID-19 Policy—a policy Shriners enacted as a private employer and one that stands wholly apart from any action it took as a vaccine provider. *Id.*

Shriners' position is clearly supported by both the language of the statute and relevant caselaw. As the Sixth Circuit has explained, the EUA "addresses the interaction between the medical provider and the person receiving the vaccine, not the interaction between an employer and an employee receiving a vaccine." *Norris v. Stanley*, 73 F.4th 431, 438 (6th Cir. 2023). In other words, the statute seeks to ensure that patients consent to the use of unapproved products they receive from medical providers. Shriners correctly asserts that the plaintiffs' "right to refuse" the vaccine "never came into being because none of the Shriners [p]arties ever actually administered the COVID-19 vaccination to any of the [p]laintiffs." Dkt. 23 at 9–10; *see also Evans v. New York City Health & Hosps. Corp.,* 2023 WL 5920189, at *8 (S.D.N.Y. Aug. 7, 2023), *report and recommendation adopted*, 2023 WL 5561145 (S.D.N.Y. Aug. 29, 2023) (holding EUA's consent requirement inapplicable when defendant hospital did not directly administer the vaccine to employees); *Bridges v. Houston Methodist Hosp*., 543 F. Supp. 3d 525, 527 (S.D. Tex. 2021) ("[The EUA statute] neither expands nor restricts the responsibilities of private employers; in fact, it does not apply at all to private employers like the hospital in this case.").

Instead, Shriners' COVID-19 Policy required the plaintiffs to receive the vaccine from *any provider*. As the plaintiffs were not required to receive,

and in fact did not receive, the vaccine from Shriners, Shriners' EUA obligations under the Provider Agreement were never triggered.* Shriners' COVID-19 Policy was a private term of employment, distinct from any obligation it may have had pursuant to its agreement with the CDC. *See Evans*, 2023 WL 5920189, at *8; *Curtis v. PeaceHealth*, 2024 WL 248719, at *5–6 (W.D. Wash. Jan. 23, 2024).

As the plaintiffs have failed to allege any other manner in which the termination of their employment may have constituted state action, the court will dismiss their § 1983 claims against Shriners.

What's more, the plaintiffs' claims against Commissioner Young are all premised on Young's alleged willful failure "to intervene and correct" Shriners' statutory and constitutional violations. Dkt. 20 ¶ 62. As the court will dismiss the claims against Shriners, the court will likewise dismiss the plaintiffs' claims against Young.

---

* A host of federal courts have held the EUA statute—which imposes an obligation on the Secretary of Health and Human Services—does not create a private right of action. *Curtis*, 2024 WL 248719, at *7 (collecting cases). But even if there were a right of action, it was clearly never triggered. The claim brought pursuant to 21 U.S.C. § 360bbb-3 will be dismissed.

### C. Remaining State-Law Claims

As the court will dismiss the plaintiffs' federal claims, and the parties are not diverse, the remaining issue is whether this court should exercise jurisdiction over the remaining state-law claims. The "general rule" in the Fifth Circuit is to "dismiss state claims when the federal claims to which they are pendent are dismissed." *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 587 (5th Cir. 1992). Where, as here, all federal claims are dismissed at an early stage of the litigation, district courts have an especially "powerful reason to choose not to continue to exercise jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988).

The court declines to exercise supplemental jurisdiction over the remaining state-law claims and will dismiss them for lack of subject-matter jurisdiction.

\*     \*     \*

For the reasons stated above, the motions to dismiss filed by both the Shriners Parties and Cecile Erwin Young are granted. Dkts. 23, 25. A final judgment will issue separately.

Signed on Galveston Island this 7th day of June, 2024.

JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE